

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

IDA MAE WHITLEY,                                )
                                                )        FILED: May 30, 2008
     Plaintiff,                                )
                                                )        *08 CV 3114 RCC*
     v.                                        )        08cv 3114
                                                )        Judge Castillo
                                                )
TAYLOR BEAN & WHITAKER MORTGAGE                 )        Magistrate Judge Valdez
CORP.; ADVANCE LENDING GROUP, CORP.;            )
GIL & GIL GROUP CORP., REAL ESTATE -            )
LINCOLN; FAVIAN CARDENAS; BLUE                  )
HORIZON REAL ESTATE CORP.; and                  )
DOES 1-10,                                      )
                                                )
     Defendants.                               )

## NOTICE OF FILING

**FILED**

AUG 0 8 2008 TC
Aug 8. 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

To:   Al Hofeld, Jr.
      Law Offices of Al Hofeld, Jr., LLC
      208 S. LaSalle Street
      Suite 1650
      Chicago, IL 60604


     The undersigned certifies under penalties of perjury that on ***Friday, August 8, 2008***, the attached ***Defendants Cardenas and Blue Horizon Real Estate Corporation's Memorandum in Support of Their Combined Motions to Dismiss and Strike Pursuant to Provisions of Fed. R. Civ. P.***, were filed with the Clerk for the United States District Court, Northern District of Illinois, and further certifies under penalties of perjury that a true and correct copy thereof was served upon all attorney(s) of record.

## CERTIFICATE AND AFFIDAVIT OF DELIVERY
## (PERSONALLY, BY MAIL OR BY FAX)

The undersigned hereby certifies under penalties of perjury as provided by law pursuant to 735 ILCS 5/1-109 that the above notice and any attached pleadings were:

1.    ___ personally delivered on _____, 2008, to all addressee(s) set forth above;

2.    _X_ placed in the U.S. mail at 180 N. Michigan Avenue, Chicago, IL 60601, with first class postage prepaid and directed to the parties at the addresses set forth above (at) (before) 5:00 p.m. on ***Monday, August 11, 2008***.

3.    ___ transmission by FAX at ___ m., FAX transmission from 312/236-5071, 180 N. Michigan Avenue, Chicago, IL 60601 and the number of pages transmitted was ___. The FAX transmission was sent to all of the above addressee(s) at their FAX number set forth after the name of said addressee(s).

ABELSKI & ASSOCIATES, LTD.
180 N. Michigan Avenue
Suite 1800
Chicago, IL  60601
(312) 236-7553
Attorney No.:  11693



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

IDA MAE WHITLEY,                              )
                                         )
      Plaintiff,                              )
                                         )
      v.                              )
                                         )
TAYLOR BEAN & WHITAKER MORTGAGE   )
CORP.; ADVANCE LENDING GROUP, CORP.; )
GIL & GIL GROUP CORP., REAL ESTATE -  )
LINCOLN; FAVIAN CARDENAS; BLUE     )
HORIZON REAL ESTATE CORP.; and     )
DOES 1-10,                              )
                                         )
      Defendants.                              )

FILED: May 30, 2008

*08 CV 3114 RCC*

Judge Castillo

Magistrate Judge Valdez

# FILED
AUG 0 8 2008 TC
Aug 8, 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## DEFENDANTS CARDENAS AND BLUE HORIZON REAL ESTATE CORP.'S

## MEMORANDUM IN SUPPORT OF THEIR

## COMBINED MOTIONS TO DISMISS AND STRIKE PURSUANT

## TO PROVISIONS OF FED. R. CIV. P.

### *INTRODUCTION*

Defendants, Favian Cardenas and Blue Horizon Real Estate Corporation, for their initial response to the Complaint, have filed three (3) motions and pursuant to Federal Rules of Civil Practice 9(b), 12(b)(6) and 12(f), to dismiss, and to strike, various portions of the Complaint.

## *MOTION I*

### *(Court I - Rule 12(b)(6)*

Favian Cardenas and Blue Horizon Real Estate Corporation (hereinafter referred to as "your Movants") have moved to dismiss *Count I* of the Complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

A.    *Defendant Favian Cardenas and Blue Horizon Real Estate Corporation are not Credit Repair Organizations as defined by CROA*

*Count I* of the Complaint, titled "CREDIT REPAIR ORGANIZATIONS ACT", purports to present a claim under Section 679b of the Credit Repair Organizations Act, 15 U.S.C. 1679, et seq., ("Act") alleging that the various defendants herein violated said Act by "fraudulently inflating and falsifying Plaintiff's income, employment and other pertinent information on their loan applications and by conspiring to fraudulently overstate the value of Plaintiff's home". (Complaint, par. 61). Section 1679b provides:

"**Prohibited practices**

**(a)    In general.  No person may –**

**(1) make any statement, or counsel or advise any consumer to make any statement, which is untrue or misleading (or which, upon the exercise of reasonable care, should be known by the credit repair organization, officer, employee, agent, or other period to be untrue or misleading) with respect to any consumer's credit worthiness, credit standing, or credit capacity to - - . . .**

**(B) any person - -**

**(i) who has extended credit to the consumer; or**

**(ii) to whom the consumer has applied to is applying for an extension of credit. . . ."**

2

However, paragraph 1679a, in relevant part, provides:

> **"For purposes of this sub-chapter, the following definitions apply**:
>
> (1) . . . . . .
>
> (2) . . . . . .
>
> **(3)    Credit repair organization**
>
> **The term "credit repair organization" --**
>
>> **(A) means any person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform (to present that such person can or will sell, provide, or perform) any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of –**
>>
>>> **(i) improving any consumer's credit record, credit history, or credit rating, or**
>>>
>>> **(ii) providing advice or assistance to any consumer with regard to any activity or service described in clause."**

Neither of your Movants is a "credit repair organization" as defined, and required, by section 1679a(3), and the provisions of that Act are inapplicable to your Movants. At no time alleged, were your Movants engaged in efforts to sell, provide or perform (nor did they engage in efforts to represent that they could or would sell, provide, or perform) any services for the express or in implied purpose of improving or providing advice or assistance to improve any consumer's credit record, credit history or credit rating. Neither is subject to the provisions of the CROA.

3

B.    *Act Applies Only to a Credit Repair Organization*

1. Purpose of CROA

Your Movants are aware of *Costa v. Mauro Chevrolet, Inc.*, 390 F. Supp. 2nd 720 (N.D.
Illinois 2005) which rejects the contention that the Act applies only to a "Credit Repair
Organization", indicating that the contention has been rejected "numerous times" in the Northern
District of Illinois.    *Costa* held that "even where a plaintiff cannot prove that the defendant is a
credit repair organization within the meaning of Section 1679a(3)(a) a plaintiff potentially "can
nevertheless state a claim under Section 1679b CROA, citing *Parker v. 1 - 800 Bar None*, U.S.
Dist. Lexus 2139, 2002 WL 215530 (N.D. Illinois 2002).  The *Costa* Court focused on the term
"person" in Section 1679b, then engaged in a statutory construction exercise, and indicated that
nothing in the text or legislative history of the CROA suggests that "person" should not be
afforded its ordinary and broader meaning than "credit repair organization".  Nevertheless, your
Movants contend that *Costa*, when contrasted with *Plattner v. Absolutions, Inc.*, 422 F. Supp. 2d
969 (N.D. Illinois 2006), demonstrates a flawed analysis of Congressional intent.  Whether the
Court examines only the wording of an unambiguous statute or considers other evidence when
the meaning is not clear, a court's task remains the same, to determine the will of Congress and
to apply it.  *Orrego v. 833 W. Buena Joint Venture*, 943 F. 2d 730, rehearing denied (7th Circuit
1991).  The *Costa* inquiry into Congressional intent is both insufficient, and inappropriate, when
contrasted with the superior analysis evidenced in *Plattner*.  Although *Plattner*  only alludes to
the precise issue presented herein, both cases rely upon an analysis of the Congressional intent of
CROA in reaching a decision.   *Plattner's* approach, focusing on the actual Congressional
expressions of intent, is direct and realistic.  It begins with the intent, as Congress expressed it, in

4

the "Findings and purposes" of Section 1679 of the Act:

**"§ 1679.  Findings and purposes**

**(a) Findings**

The Congress makes the following findings:

**(1)** Consumers have a vital interest in establishing and maintaining their credit worthiness and credit standing in order to obtain and use credit.  As a result, consumers who have experienced credit problems may seek assistance from credit repair organizations which offer to improve the credit standing of such consumers.

**(2)** Certain advertising and business practices of some companies engaged in the business of credit repair services have worked a financial hardship upon consumers, particularly those of limited economic means and who are inexperienced in credit matters.

**(b) Purposes**

The purposes of this sub-chapter are - -

**(1)** to ensure that prospective buyers of the services of credit repair organizations are provided with the information necessary to make an informed decision regarding the purchase of such services; and

**(2)** to protect the public from unfair or deceptive advertising and business practices by credit repair organizations."

*Plattner* then proceeded to the House Report for CROA, indicating that it also shed light on the

purpose and intent of Congress in enacting the CROA, citing therefrom:

""The credit repair business involves the marketing of credit repair services to consumers whose consumer's reports contain adverse information that interferes with their ability to obtain credit.  According to the FTC, these businesses, through advertisements in oral representations, lead consumers to believe that

5

> adverse information in their consumer reports can be deleted or modified regardless of its accuracy. . . . . .such representations made by credit repair clinics are often misleading, and consumers, mostly low-and moderate-income individuals, are cheated out of the money that they paid for services. H.R. Rep. No. 103-486, at 57 (1994)."

*Plattner* 422 F. Supp 2d at 973.  The Court further cites the Report, indicating:

> ""[the CROA] seeks to regulate the industry to ensure that consumers are provided with necessary information about credit repair organizations so that they can make informed decisions regarding the purchase of their services and protect the public from unfair and deceptive advertisement of business practices by the industry"".

*Plattner* 422 F. Supp 2d at 973.

The basic contrast between *Costa* and *Plattner* is that *Costa* essentially ignores the plain language of Congress' intent, both as codified in the Act and as set forth in the House Report. Where Congress has made the intent clear, the court must give effect to that intent. *Miller v. French*, 120 S.Ct. 2246, 530 U.S. 327, 147 L.Ed. 2d, 326, on remand 234 F. 3d 1273 (7th Circuit 2000). In the absence of specific guidance, the court of appeals must attempt to render a statutory interpretation which best fulfills the state of congressional purpose in an equitable manner. *U.S. v. Pitt-Des Moines, Inc.*, 168 F.3d 976 (7th Circuit 1999). A court must not be guided by a single sentence of member of sentence, but must look to the provision of the whole law, and its object policy. *Grammatico v. U.S.*, 109 F.3d 1198 (7th Circuit 1997). While *Plattner* looked to the actual expressions of intent in order to determine that intent, *Costa* minimized, basically disregarding, those crystal clear expressions of the purpose of the Act. Rather than look to those clear expressions as a guide, it repudiated them, indicating:

> "Defendants point to nothing in the text or legislative history of the CROA to suggest that "person" should not be an ordinary broader meaning than "credit repair organization." Accordingly, the Court finds that, to sustain a claim on the

6

> plain language of Section <u>1679b</u> of the CROA, Plaintiffs need not allege that
> [Defendant] Mora Chevrolet is a "credit repair organization"".

<u>Costa</u> 390 F. Supp. 2d at 739. Rather than implement the Congressional expressions, <u>Costa</u>

avoided them by first engaging in an exercise of statutory construction which would have been

obviated by adopting the direct approach in <u>*Plattner*</u>. <u>Costa</u> ignores express indications of

Congressional intent in order to inject a purpose which could easily have been, but was not,

expressed by Congress. In order to do so, <u>Costa</u> relied upon <u>*Parker*</u>, which held that in enacting

the Consumer Protection Act ("CPA"), of which CROA is a part, Congress intended for the

courts to broadly construe its provisions in accordance with the remedial purpose of the CPA.

<u>Parker</u>, 2002 WL 215530, at 2. However, in a footnote citing the House Report, <u>*Plattner*</u> struck

at the heart of the difference between it and <u>Costa</u>, as well as the issue herein, when it

distinguished <u>*Parker*</u>:

> "The cases cited by the court in *Parker,* however, were decided prior to the
> enactment of the CROA, HN 11th - - Given that Congress codified its findings and
> purposes as part of the CROA, it is proper for the court to interpret the CROA in
> light of Congress' expressed intent."

<u>Plattner</u>, 422 F. Supp. 2d at 973.

2.    <u>*The Word "Person" in Section 1979b Means "Credit Repair Organization"*</u>

The "person" in 1979b may not be provided an independent existence, separate and apart

from the "person" in Section 1679a and the remainder of the Act. Subsection b does not exist in

a vacuum, free of the remainder of the Act where convenient, and a part thereof when otherwise

convenient.

7

*Costa* conveniently overlooks the use of the term "person", in Section 1679(a)(3)(A), defining the term "credit repair organization":

"(A) means any person who uses any instrumentally of interstate commerce. . . . ." *Costa* fails to address how, where, or why "person", as utilized in Section 1679a, is, or may be, differentiated from the use of "person' in 1679b.  Identical words used in different parts of the same statute generally are presumed to have the same meaning *Merrill Lynch Pierce Fennder and Smith, Inc. v. Dibit*, 126 S.C.t. 1503, 547 U.S. 71, 164 L.E.d. 2d 179; *IBP, Inc. v. Alvarez*, 126 S.Ct. 514, 546 U.S. 21, 163 L.E.d 288.  When the same word is used in a statute in close proximity, there is a presumption that the word has the same meaning in both places.  *Murray v. Cross Co. Bank*, 399 F.Supp. 2d 843, (N.D.Ill. 2005).  Identical words used in different parts in the same Act are the intended to have the same meaning. *Firstar Bank, N.A. v. Faul*, 253 F.3d 982. (N.D. Ill)  *Costa* does not address the inconsistency of approaching the identical term differently in each section.  In related regard, *Costa* also ignores the inescapable inter-relationship of the term "person" in Section 1679a and 1679b.  Section (a) incorporates the phase "any person" in the definition of "credit repair organization".  Any person who engages in the enumerated activities, becomes a credit repair organization.  The term "any" is generally used to indicate lack of restrictions or limitations on the term modified. *U.S. ex rel. Barajas v. U.S.*, 258 F. 3d 1004 (9th Circuit 2001).  "Any" person, literally means every person.  "No" person, literally includes every person.  There is no difference in the "any person" in section (a) and the "no person" in section (b).  Nothing in 1679b differentiates the "person" therein from the "person" who becomes a "credit repair organization" by engaging in specified behavior.

The "person" referred to in 1979b, must be read in the context in which "person" is utilized in subsection a. Only then is it consistent with the intent expressed in the House Report, the codified intent of Congress and with the remainder of the Act. That treatment of "person" in 1679b obviates the need to engage in construction. The conclusion in *Costa* simply ignores patent realities in order to create a separate, and independent, statute, in the form of 1679b, unrelated to the expressions of Congressional intent and every other subsection of the CROA. Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedent or authorities that inform the analysis. *Doland v. U.S. Postal Service*, 126 S.Ct. 1252, 546 U.S. 481, 163 L.Ed. 2d 1079. It is the fundamental cannon of statutory construction that the words of a statute must be read in their context and where they viewed to the place in the overall statutory scheme *Owasso Independent School District No. 1-011 v. Falvo*, 122 S.Ct. 934, 534 U.S. 426, 151 L.Ed. 2d, 896. A court of appeals determines plain meaning of a statute by looking to the particular statutory language at issue, as well as the language and design of the statute as a whole. *Conlan v. U.S. Department of Labor*, 76 F.3d 271, certiorari denied 117 S.Ct. 431, 519 U.S. 980, 136 L.Ed. 2d 330. The CROA is framed, in both history and text, in terms of the prevention of the abuse of the public by "credit repair organizations". *Costa's* interpretation is predicated upon an inappropriate statutory construction which ignores both the stated Congressional purpose and the design of the Act itself.

9

### ***MOTION II***

### *(Count I - Rule  9(b))*

*COUNT I* FAILS TO STATE AVERMENTS OF FRAUD WITH THE

PARTICULARITY REQUIRED BY RULE 9(b), AND, THEREFORE, FAILS TO STATE A

CAUSE OF ACTION.

Fed. R. Civ. 9(b) specifies that the circumstances constituting fraud or mistake shall be

stated with "particularity". As articulated by the Seventh Circuit, "this means that the who, what,

when, where, and how; the first paragraph of any newspaper story, must be evident in the

complaint." *Dileo v. Ernst and Young*, 901 F. 2nd 624, 627 (7th Cir. 1990). Pleading under Rule

9 requires allegation of facts. *Jackson v. Marion County*, 66 F.3d 151, (7th Circuit 1995).

Allegations made on information and belief must set forth facts upon which that information and

belief rests. *In Re Abbott Laboratories Securities Litigation*, 813 F.Supp. 1315 (N.D. Illinois

1992).

The gist of *Count I* of the Complaint is that your Movants, in concert with other named

Defendants herein, engaged in various fraudulent and deceptive acts in order to cause the

Plaintiff to accept obligations, in excess of their ability to pay, for an overvalued asset. However,

as to the moving Defendants herein, the operative allegations of fraud are pled with insufficient

particularity. Each allegation is conclusory, relying solely upon speculation. In particular,

paragraphs 31, 38, 41, 42, 45, 47, 54, 55 and 56 all lack the substantive quality required by of

Rule 9(b). Consequently, references in paragraphs 10 and 57, which rely on the allegations

referenced in the preceding sentence, also fail to comply with Rule 9(b).

10

Paragraph 10 - The Complaint contains no factual allegations sufficient to conclude that any loans were obtained from Defendants Cardenas and Blue Horizon Real Estate Corp.

Paragraph 54 - There are no factual allegations sufficient to conclude that Defendants Cardenas and Blue Horizon Real Estate Corp., inflated either the Plaintiff's income or the appraised value of the property.

Paragraph 57 - The Complaint lack allegations sufficient to establish either the provision of an inflated property value, or any loan based upon an inflated property value. No allegations in the Complaint establish the basis of the allegation, i.e., that the value of the property was inflated. Consequently, no fraudulent act is alleged.

## *MOTION III*

### *(Motion to Strike - Rule 12(f))*

VARIOUS AVERMENTS WITHIN THE COMPLAINT ARE GRATUITOUS, ARGUMENTATIVE, PREJUDICIAL AND/OR OTHERWISE IN VIOLATION OF THE PROHIBITIONS SET FORTH IN THE RULE 12 (f).

Your Movants contend that allegations violate the provisions of 12(f), as follow:

Paragraph 5 - "Plaintiff is African-American".

Paragraph 11 - ". . . . . .in the dangerous. . . . . . in order to have a safe and stable place to live during their retirement".

Paragraph 12 - ""Do for them what you would do for your own parents"".

11

Paragraph 21 - "To bait, plaintiff still further. . . . . . ."

Paragraph 22 - ". . . . . .claiming to have been out of town."

Paragraph 33 - ". . . . . .in Tunica, MI, an area notorious for the highest level of poverty among African-Americans in the U.S."

Paragraph 39 - "As a real estate broker, Sompolski was discipline in 2004."

Paragraph 54 -

    (a) ". . . . . .an enticing commission structure".

    (b) ". . . . . .handsome yield spread premium payments".

Paragraph 59 - ". . . . . .at the dawn of their retirement."

**WHEREFORE**, Favian Cardenas and Blue Horizon Real Estate Corporation, respectfully pray for entry of an order dismissing the Complaint.

    Sidney Abelski, Attorney for Favian Cardenas and
    Blue Horizon Real Estate Corporation

ABELSKI & ASSOCIATES, LTD.
180 N. Michigan Avenue
Suite 1800
Chicago, IL 60601
312/236-7553
Attorney Code No.: 11693

12