# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

IDA MAE WHITLEY, CLYDE WHITLEY    )
and KENNA WHITLEY,    )
   )
     Plaintiffs,    )    No. 08 C 3114
   )
v.    )    Judge Ruben Castillo
   )
TAYLOR BEAN & WHITACKER    )
MORTGAGE CORP., ADVANCE LENDING    )
GROUP, CORP., OSWALD OCHOA,    )
JOHN FREY OSPINA, ANITA LOGAN,    )
FAVIAN CARDENAS, BLUE HORIZON    )
REAL ESTATE CORP., and DOES 1-10,    )
   )
     Defendants.    )

## MEMORANDUM OPINION AND ORDER

Ida Mae Whitley ("Mrs. Whitley"), Clyde Whitley ("Mr. Whitley"), and their adult

daughter Kenna Whitley ("Kenna") (collectively "Plaintiffs") bring this action against Taylor,

Bean & Whitacker Mortgage Corp. ("TB&W"), Advance Lending Group, Corp. ("Advance

Lending"), Blue Horizon Real Estate Corp. ("Blue Horizon"), Oswald Ochoa ("Ochoa"), John

Frey Ospina ("Ospina"), Anita Logan ("Logan") and Favian Cardenas ("Cardenas") (collectively

"Defendants") alleging violations of the Credit Repair Organizations Act, 15 U.S.C. § 1679b

("CROA"), the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq* ("RESPA"), the

Fair Housing Act, 42 U.S.C. § 3605 ("FHA"), the Equal Credit Opportunity Act, 15 U.S.C. §

1691 ("ECOA"), and the Civil Rights Act, 42 U.S.C. § 1981, along with various state law

violations. (R. 19, Am. Compl.)  Currently before the Court are four motions to dismiss filed by

Logan (R. 35), TB&W (R. 38), Advance Lending, Ochoa, and Ospina ("Advance Lending

Defendants") (R. 42), and Blue Horizon and Cardenas (R. 46).  For the reasons stated below, the

motions to dismiss are denied in part and granted in part.

## RELEVANT FACTS

In January 2006, Plaintiffs contacted Cardenas, an Illinois licensed real estate broker, through Blue Horizon, Cardenas' brokerage firm, for assistance with purchasing their first home. (R. 19, Am. Compl. ¶¶ 9, 16.) Kenna asked Cardenas to "do for [her parents] what you would do for your own parents." (*Id.* ¶ 16.) Plaintiffs allege that instead Cardenas took advantage of the fact that they were unsophisticated, first-time home buyers and showed them homes that he knew they could not afford. (*Id.* ¶¶ 17, 18.) In April 2006, Plaintiffs decided they wanted to purchase a home that Cardenas showed them at 8519 S. Kenton in Chicago. (*Id.* ¶ 19.) Plaintiffs allege that Cardenas did not advise them on how to make an informed offer or how to negotiate the purchase price or other terms of the contract. (*Id.*) After Plaintiffs' offer of $294,000, the asking price of the house, was accepted, Cardenas arranged many aspects of the transaction including the appraisal, the closing attorney, the home owner's insurance policy and financing. (*Id.* ¶¶ 20, 53.)

TB&W was utilized as the lender and Advance Lending and its president, Ochoa, as the mortgage broker to finance Plaintiffs' home purchase. (*Id.* ¶¶ 7, 8, 20.) Ochoa worked with Ospina, an employee of LaSalle Bank, to process the loan for Plaintiffs. (*Id.* ¶ 10.) Daniel Sompolski ("Sompolski"), an Illinois licensed appraiser and real estate broker, conducted an appraisal of the property. (*Id.* ¶ 50.) In his report, Sompolski appraised the property for $295,000. (*Id.* ¶¶ 50, 55.) Plaintiffs allege that this value had been agreed upon in advance of the appraisal inspection and was "significantly and artificially inflated relative to comparable homes in the area." (*Id.* ¶¶ 53, 55.) Plaintiffs further allege that a significant amount of

2

Sompolski's business came from Advance Lending and that he obliged their request to arrange a "fraudulently inflated appraisal of the market value of the property" in order to continue to receive business from the company. (*Id.* ¶¶ 52, 54.)

To process their loan application, Mr. and Mrs. Whitley provided Defendants with three years of their personal tax returns, Mrs. Whitley's paycheck stubs for six months, and bank statements and rent receipts for twelve months. (*Id.* ¶¶ 37, 38.) Instead of using the information provided, however, Plaintiffs allege that Defendants "fabricated an entire socio-economic profile" of Mrs. Whitley and utilized this "made-up financial and other information" in the application for financing. (*Id.* ¶ 39.) Specifically, the loan application completed by Logan, an employee of TB&W, stated that Mrs. Whitley is a white female with a college degree, employed by the City of Chicago as a mechanic making $6,800 per month in gross income or $81,600 annually. (*Id.* ¶ 40.) In reality, Mrs. Whitley is African-American and has a seventh grade education. (*Id.* ¶¶ 5, 42.) Although she is employed by the City of Chicago, she works as a garage assistant responsible for checking the fluid levels on trucks, not a mechanic, and makes $16.50 per hour which translates to $2,840 in gross income per month and $34,000 annually. (*Id.* ¶¶ 43, 44.) In addition, Plaintiffs were paying $925 per month in rent, not $1,100 as stated in the loan application. (*Id.* ¶ 45.) Although Mr. Whitley receives Social Security benefits as income, Defendants decided not to use Mr. Whitley as a co-borrower; Mrs. Whitley was listed as the sole borrower on the loan. (*Id.* ¶¶ 46, 47.)

On or about May 30, 2006, Plaintiffs closed on the house. (*Id.* ¶ 28.) Cardenas was not present, and Plaintiffs allege that the "signing was rushed." (*Id.* ¶¶ 28, 29.) Plaintiffs claim that they did not receive any explanation about the contents of the documents they signed or the terms

of their financing and were not given copies of all the documents to take home with them. (*Id.* ¶¶ 29, 31.) The property was financed for 100% of its value through an "80/20" loan financing arrangement, under which the mortgage obligation would be split into two loans. (*Id.* ¶ 32.) Plaintiffs, however, did not discover that they had been given two loans until two months following closing, when after making the first payment in the amount of $2,077.34 to TB&W they received a phone call from Citimorgage, Inc. ("Citi") claiming that $462.58 for their second loan was overdue. (*Id.*)

Plaintiffs claim that they were never properly informed that their mortgage payment would be $2,539.92 per month. (*Id.* ¶ 33.) Plaintiffs allege that Cardenas assured them that their payment would not be more than $1,800 including principal, interest, and escrow amounts for taxes and insurance, that after six months they could refinance with him for a lower interest rate and payment, and that they would receive a $8,000 rebate on the purchase of the home after closing. (*Id.* ¶ 22, 23, 24.) Plaintiffs allege that they never received any written, preliminary disclosures of loan terms such as a good faith estimate of settlement charges or a preliminary Truth-In-Lending disclosure statement from mortgage lender TB&W or broker Advance Lending. (*Id.* ¶¶ 6, 7, 26.) Nor did they receive any written or oral notification of change in the payment amount or loan terms that were quoted by Cardenas. (*Id.* ¶ 34.)

Plaintiffs further allege that Defendants "knew or should have known that [Plaintiffs] could not afford to make the payments" and "fraudulently or negligently represented to [Plaintiffs] that they could afford the home." (*Id.* ¶ 66.) Plaintiffs allege that Defendants used an inflated home value and false employment and educational information for Mrs. Whitley to increase their commissions and that TB&W assigned Mrs. Whitley an interest rate higher than

4

what she qualified for. (*Id.* ¶¶ 66, 67.) By inducing Mrs. Whitley into the financing arrangement, Plaintiffs allege that TB&W, Logan, Advance Lending, Ospina and Cardenas, all benefitted with higher percentage-based, closing fees and commissions. (*Id.* ¶ 67.) Plaintiffs also allege that TB&W, who received interest-income and profits from the loans, paid "handsome yield spread premium payments" to Advance Lending in connection with the financing deal and that Cardenas received a "kickback" payment from the arrangement. (*Id.* ¶¶ 67, 69, 105.)

Plaintiffs could not afford the payments on the loans. (*Id.* ¶ 66.) In January 2008, TB&W initiated a foreclosure action against Mr. & Mrs. Whitley in the Circuit Court of Cook County. (*Id.* ¶ 72.) Although both Mr. Whitley and Kenna contributed to the mortgage obligation, the family has fallen behind in the payments on the larger, first-lien loan. (*Id.* ¶ 48, 66.) They have continued to make payments and are current on the second loan. (*Id.* ¶ 48.) Plaintiffs have tried three times to refinance the loans, but allege that because the mortgage indebtedness is greater than the actual value of the property and income support, their applications for refinancing have been rejected. (*Id.* ¶ 70.) Plaintiffs have also repeatedly requested that TB&W and Citi modify their loan arrangements, but these requests have also been denied. (*Id.* ¶ 71.)

## PROCEDURAL HISTORY

On May 30, 2008, Plaintiffs filed their initial complaint which was amended on August 11, 2008. (R. 1, Compl.; R. 19, Am. Compl.) The amended complaint contains thirteen counts including violations of the CROA (Count I), RESPA (Count II), FHA (Count XII), ECOA (Count XIII) and the Civil Rights Act (Count XI). (R. 19, Am. Compl.) In addition, the

5

amended complaint alleges a violation of the Illinois Consumer Fraud Act, 815 ILCS 505/2 ("ICFA") (Count V) as well as state law claims for fraud (Count III and IV), negligent misrepresentation (Count VI), negligence (Count VII), intentional/negligent infliction of emotional distress (Count VIII) and breach and inducement of breach of fiduciary duty (Counts IX and X). (*Id.*) On September 22, 2008, pursuant to Federal Rules of Civil Procedure 12(b)(6), four motions to dismiss where filed by Logan (R. 35), TB&W (R. 38), Advance Lending Defendants (R. 42), and Blue Horizon and Cardenas (R. 46).[1]

## LEGAL STANDARDS

In determining whether to grant a motion to dismiss under Rule 12(b)(6), the Court assumes all well-pleaded allegations in the complaint to be true and draws all inferences in the light most favorable to the plaintiff. *Killingsworth v. HSBC Bank*, 507 F.3d 614, 618 (7th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). To survive a motion to dismiss, the complaint must overcome "two clear, easy hurdles": (1) "the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds on which it rests;" and (2) "its allegations must actually *suggest* that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the 'speculative level.'" *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (emphasis in original).

---

[1] Additionally, pursuant to Rule 12(f), Cardenas and Blue Horizon move to strike various allegations in the complaint as "gratuitous, argumentative, and prejudicial." (R. 46, Cardenas & Blue Horizon's Mot. to Dismiss at 10.) The Court finds that striking these portions of the complaint will not expedite this matter and denies this motion without further analysis. *See Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989) (finding that motions to strike are generally disfavored because they "potentially serve only to delay"); *see also LaSalle Bank Nat'l Assoc. v. Paramount Props.*, 588 F. Supp. 2d 840, 860 (N.D. Ill. 2008) (same).

Plaintiffs claims that are "premised upon a course of fraudulent conduct," are subject to the heightened pleading standard of Rule 9(b). *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). Rule 9(b) requires the plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The circumstances of fraud or mistake include the "identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs.*, 536 F.3d 663, 668 (7th Cir. 2008); *see also Uni*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992) (describing Rule 9(b) particularity as the "who, what, where, when and how" of the alleged fraud). In a case involving multiple defendants, the complaint should inform each defendant of the nature of their alleged participation in the fraud. *Vicom, Inc. v. Harbridge Merchant Servs.*, 20 F.3d 771, 778 (7th Cir. 1994); *Shair v. Qatar Islamic Bank*, No. 08 C 1060, 2009 U.S. Dist. LEXIS 20572, at *3 (N.D. Ill. Mar. 16, 2009).

## ANALYSIS

### A.   Standing of Mr. Whitley and Kenna

The first issue the Court must address is whether Mr. Whitley and Kenna have standing in the present action. Although it is undisputed that Mrs. Whitley was the sole borrower on the mortgage loans at issue, both Mr. Whitley and Kenna are party plaintiffs in all counts except the RESPA violation of Count II. (R. 19, Am. Compl. ¶¶ 47, 101.) TB&W and Advance Lending Defendants argue that because neither Mr. Whitley nor Kenna appear on the loan application or documents, they do not have standing to assert their claims. (R. 39, TB&W's Mem at 21; R. 44, Advance Lending Defs.' Mem. at 5.)

Federal courts apply two distinct standing analyses: constitutional and prudential. *Rawoof v. Texor Petroleum Co., Inc.*, 521 F.3d 750, 756 (7th Cir. 2008). TB&W argues that Mr. Whitley and Kenna lack constitutional standing, while Advance Lending Defendants' argument is based on lack of prudential standing. (*See* R. 39, TB&W's Mem. at 21; R. 44, Advance Lending Defs.' Mem. at 5.) Constitutional standing is jurisdictional, arising from the case or controversy requirement of Article III. *Rawoof*, 521 F.3d at 756. A plaintiff must meet three requirements to establish Article III standing: (1) demonstrate an injury in fact; (2) establish a connection between the alleged injury in fact and the alleged conduct of the defendant; and (3) demonstrate that requested relief will remedy the alleged injury in fact. *Vermont Agency of Natural Res. v. U.S.*, 529 U.S. 765, 771 (2000).

Prudential standing stems not from the Constitution, but from prudent judicial administration. *Swearingen-el v. Cook County Sheriff's Dept.*, 456 F. Supp. 2d 986, 990 (N.D. Ill. 2006). "In other words, although the Constitution permits federal court adjudication, a court may decide that in certain instances policy mitigates against judicial review . . . ." *Id.* To promote prudent judicial administration, Federal Rule 17(a) provides that "every action shall be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a). A real party in interest is defined by the Seventh Circuit as "a party that has a legally protectable interest in the outcome of the suit." *Old Ben Coal Co. v. OWCP*, 476 F.3d 418, 420 (7th Cir. 2007). A party that "has no stake in [the] litigation" and "is a party in name only," is not a real party in interest. *Id.*

Advance Lending Defendants argue that Mr. Whitley and Kenna lack prudential standing because they are not real parties in interest. (R. 44, Advance Lending Defs.' Mem. at 6.) Mr. Whitley, however, did participate in the mortgage loan application and transactions. The

complaint alleges that Defendants took income information from both Mr. and Mrs. Whitley during the loan application process, but decided not to use Mr. Whitley as a co-borrower on the loan. (*Id.* ¶¶ 46, 47.) Nevertheless, the mortgage instruments recorded with the Cook County Recorder of Deeds identify and are signed by both Mr. and Mrs. Whitley.[2] (R. 19, Pls.' Consolidated Resp. to Defs.' Mot. to Dismiss ("Pls.' Resp."), Ex. A & B.) In addition, the title to the property is held by both Mr. and Mrs. Whitley as tenants by the entirety. (*Id.* Ex. D.) Consistent with both Mr. and Mrs. Whitley being mortgagors, TB&W has listed both parties as named defendants in the state court foreclosure action. (*Id.* Ex. C; R. 19, Am. Compl. ¶ 72.) Furthermore, Mr. Whitley has demonstrated that he was injured by Defendants' actions. He is in jeopardy of losing his home and has been unable to refinance out of the loans arranged by Defendants. (*Id.* ¶¶ 70, 72.) Accordingly, Mr. Whitley has both constitutional and prudential standing in this action.

The Court finds, however, that Kenna Whitley does not have prudential standing to assert the purported claims. Although the complaint alleges that Kenna was living with her parents and contributed to the mortgage payment (*Id.* ¶ 48), there is no indication that she was involved in the loan and mortgage process other than asking Cardenas to "do for [her parents] what you would do for your own parents." (*Id.* ¶ 16.) Kenna does not have a legally protectable interest in the outcome of this suit, and therefore the claims brought by her must be dismissed. *See Old Ben Coal Co.,* 476 F.3d at 420.

---

[2] These additional documents may be considered by the Court in ruling on the motion to dismiss. *See McCready v. eBay,* 453 F.3d 882, 891 (7th Cir. 2006) ("documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." (citation omitted)).

## B.    Agency Liability Upon TB&W

Plaintiffs allege that TB&W is directly liable for "putting false information in Mrs. Whitley's loan application and/or in fraudulently or negligently qualifying and underwriting loans to [Plaintiffs]." (R. 19, Pls.' Resp. at 12.) In the alternative, Plaintiffs allege that Advance Lending was TB&W's agent and that TB&W authorized Advance Lending to find and arrange mortgage loans on its behalf. (R.19, Am. Compl. ¶¶ 79, 92.) Plaintiffs further allege that Cardenas, Blue Horizon, Ospina and Ochoa operated as agents of Advanced Lending and subagents of TB&W. (*Id.* ¶ 79.) TB&W argues that Plaintiffs have failed to plead sufficient facts to support this theory of agency. (R. 39, TB&W's Mem. at 5.)

"Agency is a fiduciary relationship in which the agent has the power to act on the principal's behalf." *Sphere Drake Ins. Ltd. v. Am. Gen. Life Ins. Co.*, 376 F.3d 664, 672 (7th Cir. 2004). The test for agency is "whether the alleged principal has the right to control the manner and method in which work is carried out by the alleged agent and whether the alleged agent can affect the legal relationships of the principal." *Chemtool, Inc., v. Lubrication Techs.*, 148 F.3d 742, 745 (7th Cir. 1998); *Tribett v. BNC Mortgage Inc.*, No. 07 C 2809, 2008 U.S. Dist. LEXIS 3573, at *12 (N.D. Ill. Feb. 17, 2009). The parties must consent to a principal-agent relationship, which may be created by conduct or contract. *Chemtool, Inc.,* 148 F.3d at 745. In the broker-lender context, if the evidence indicates that "the broker had a close relationship or far more authority than that of simply bringing the borrower and lender together," then the Court "may deem the broker to be an agent of the lender." *Taylor, Bean & Whitacker Mortgage Co. v. Cebulak*, No. 03 C 7425, 2004 U.S. Dist. 18803, at *37-38 (N.D. Ill. Sept. 20, 2004). The existence and scope of an agency relationship are questions of fact. *Tribett*, 2008 U.S. Dist.

10

LEXIS 3573 at *13.

To plead the existence of an agency relationship, a plaintiff must allege a factual predicate to create the inference of agency. *Id.* In support of their theory of agency, Plaintiffs allege that there was a written contract between TB&W and Advance Lending, under which Advance Lending arranged a significant number of loans for the company. (R. 19, Am. Compl. ¶¶ 91-93.) Plaintiffs allege that Advance Lending utilized TB&W's credit granting policies, rate sheets, product sheets, loan pricing software, closing documents and training materials to process Plaintiffs' loans. (*Id.* ¶¶ 93-99.) Plaintiffs further allege that TB&W paid Advance Lending to increase the interest rate on Mrs. Whitley's loan and that both TB&W and Advance Lending shared the benefit of yield spread premiums ("YSP's") based on the above "par" interest rate. (R. 19, Am. Compl. ¶¶ 85-88.) With regard to Cardenas, Ospina and Ochoa, Plaintiffs allege that these individuals made material misrepresentations about the loan terms to Plaintiffs and that a portion of the YSP payments were directed toward them as additional compensation and that Cardenas received illegal "kickback" payments. (*Id.*, ¶¶ 68, 80-83, 89, 105.)

The Court finds that the above allegations, taken as true, indicate that the relationship between Advance Lending and TB&W was more involved than simply bringing the borrower and lender together. Plaintiffs have therefore sufficiently pleaded an inference of an agency relationship for purposes of a motion to dismiss. *Taylor, Bean & Whitacker Mortgage Co.*, 2004 U.S. Dist. LEXIS 18803 at *38 ("Because the presence or absence of an agency relationship . . . is a question of fact better left for determination at summary judgment. . . [plaintiff] has sufficiently

11

pled an agency relationship. . . .").  Accordingly, the motion to dismiss on this ground is denied.[3]

## C.  Allegations of Fraud

Counts I, III-V, and IX are all premised on Defendants' alleged fraudulent conduct.  (R.

19, Am. Compl.)  TB&W, Advance Lending Defendants, Cardenas and Blue Horizon argue that

Plaintiffs have failed to plead with particularity the circumstances constituting fraud as required

by Rule 9(b).  (R. 39, TB&W's Mem. at 13; R. 44, Advance Lending Defs.' Mem. at 7; R. 46,

Cardenas & Blue Horizon's Mem. at 9-10.)  The Seventh Circuit has explained that "Rule 9(b)

ensures that a plaintiff [has] some basis for his accusations of fraud before making those

accusations and thus discourages people from including such accusations in complaints simply to

gain leverage for settlement or for other ulterior purposes."  *Uni\*Quality, Inc.*, 974 F.2d at 924.

Under Rule 9(b), Plaintiffs must allege the "who, what, where, when and how" of the alleged

fraud for each defendant.  *Id.* at 923; *Vicom, Inc.*, 20 F.3d at 778.  Attributing allegations to

defendants as a single group is generally insufficient to meet the heightened pleading standard of

Rule 9(b).  *In re Spiegel, Inc.*, 382 F. Supp. 2d 989, 1017 (N.D. Ill. 2004) (citing *Sears v. Likens*,

912 F.2d 889, 893 (7th Cir. 1990).

### 1.  Allegations Premised on the Alleged False Loan Application

Counts I, V, and IX are premised in part on Plaintiffs' allegation that Defendants

---

[3] TB&W's argument that even if agency has been sufficiently pleaded, the alleged
conduct was beyond the scope of the agency, requires a factual determination inappropriate at
this stage. *Taylor, Bean & Whitacker Mortgage Co.*, 2004 U.S. Dist. LEXIS 18803 at \*38.

fraudulently falsified Mrs. Whitley's material information on the loan application.[4] (*See* R. 19, Am. Compl. ¶¶ 101, 131, 172.) Advance Lending Defendants argue that because the complaint does not specify "the specific defendant that purportedly told her to use false financial and other information" or "to sign the final loan applications with falsified information," the allegations are insufficient to withstand a motion to dismiss. (R. 44, Advance Lending Defs.' Mem. at 8; *see also* R. 46, Cardenas & Blue Horizon's Mem. at 10.) Defendants, however, mischaracterize Plaintiffs' allegation. Plaintiffs allege that they provided *accurate* employment and personal information and supporting documentation to Defendants, and that instead of using this information, Defendants inserted false information into the loan applications. (R. 19, Am. Compl. ¶¶ 40, 56-59.)

In the Seventh Circuit, a plaintiff who provides a "general outline of the fraud scheme" sufficient to "reasonably notify the defendants of their purported role" in the fraud satisfies Rule 9(b). *Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir. 1992). Although individualized information about the role of each defendant in the fraud is generally required, "the particularity requirement of Rule 9(b) must be relaxed where the plaintiff lacks access to all facts necessary to detail his claim." *Corley v. Rosewood Care Ctr.*, 142 F.3d 1041, 1051 (7th Cir. 1998); *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328 (7th Cir. 1994) (finding that when details of the fraud "are within the defendant's exclusive knowledge," specificity requirements are less stringent"). Where matters are within the unique knowledge of defendants, Rule 9(b) does not preclude allegations based on information and belief, provided the complaint includes the specific

---

[4] Plaintiffs have pleaded in the alternative that it was Logan, Advance Lending, or all Defendants that inserted the false information. (R. 19, Am. Compl. ¶¶ 40, 56-59.)

facts on which the belief is based. *W. United Life Assur. Co. v. Fifth Third Bank*, No. 02 C 7315, 2003 U.S. Dist. LEXIS 2531, at *9 (N.D. Ill. Feb. 19, 2003).

The Court finds that Plaintiffs have sufficiently pleaded claims based on the alleged fraud in the loan application. Although they are without knowledge of who specifically inserted the false information, Plaintiffs have provided a general outline of the fraud scheme sufficient to give Defendants notice of their purported roles. The motions to dismiss these claims are therefore denied.

### 2. Allegations Premised on the Inflated Home Appraisal

Counts III and IV, and parts of Count I and V, are based on Plaintiffs' allegation that Defendants fraudulently inflated the appraisal value of the property. (R. 19, Am. Compl. ¶¶ 101, 119-124, 126-28, 131.) The complaint alleges that Sompolski was an agent of Cardenas, Ospina and/or Advance Lending and that Defendants conspired with Sompolski to include an inflated property value in his appraisal report in order to support the loan amounts that they wanted to give Plaintiffs. (*Id.* ¶¶ 51-55.) Plaintiffs further allege that a significant amount of Sompolski's business came from Advance Lending and that he obliged their request to arrange a "fraudulently inflated appraisal of the market value of the property" in order to continue to receive business from the company. (*Id.* ¶¶ 52, 54.)

TB&W and Advance Defendants argue that Count IV, Plaintiffs' civil conspiracy claim is a "legal impossibility." (R. 44, Advance Defs.' Mem. at 11; *see also* R. 39, TB&W's Mem. at 15.) Plaintiffs allege that Sompolski was the agent of Cardenas, Ospina and/or Advance Lending for the purpose of performing the appraisal. (R. 19, Am. Compl. ¶ 51.) Under Illinois' intracorporate conspiracy doctrine, however, there can be no civil conspiracy between a

14

corporation's own officers or employees nor between a corporation and its agents. *Buckner v. Atl. Plant Maint.*, 182 Ill. 2d 12, 24 (1998) (a conspiracy cannot exist between a principal and an agent because the acts of the agent are deemed to be the acts of the principal).[5] Sompolski's actions are deemed the acts of Cardenas, Ospina and/or Advance Lending making the civil conspiracy claim legally insufficient. *Martinez*, 527 F. Supp. 2d at 839 ("When a body and its limbs agree to act, it does not create an actionable conspiracy."). Count IV is therefore dismissed.

The Court finds that Plaintiffs have sufficiently pleaded the other claims of fraud related to the appraisal.[6] The complaint, however, does not justify raising these allegations against all Defendants. Attributing allegations to defendants as a single group is generally insufficient to meet the heightened pleading standard of Rule 9(b). *In re Spiegel, Inc.*, 382 F. Supp. 2d at 1017. The complaint only alleges that "Cardenas, Ospina, and/or Advance Lending" "ordered and arranged for an appraisal of the property." (R. 19, Am. Compl. ¶¶ 49, 51-52.) Accordingly Counts I, III, and V related to the fraudulently inflated appraisal are limited to Cardenas, Ospina, Advance Lending and based on the agency theory, as explained below, TB&W.

---

[5] Courts have recognized two exceptions to the Illinois intracorporate conspiracy doctrine: (1) a conspirator acts out of self-interest rather than in the interest of the principal; and (2) when the scope of the conspirators act beyond the scope of their official duties. *Georgeson*, 2005 U.S. Dist. LEXIS 14901 at *8-9. The Court finds that neither of these exceptions are applicable, Sompolski's actions were within his official duties as an appraiser and although Sompolski received some benefit, in the form of additional business, the "fraudulently inflated appraisal" was for the benefit of Cardenas, Ospina and/or Advance Lending.

[6] TB&W's argument that Plaintiffs have failed to sufficiently allege that the value of the property was inflated is unpersuasive. (*See* R. 39, TB&W's Mem. at 13.) Plaintiffs have alleged that the appraisal value of $295,000 was "inflated relative to comparable homes in the area," and that their "mortgage indebtedness is greater then the actual property value." (R. 19, Am. Compl. ¶¶ 55-56, 70.) At this stage, the Court must assume these allegations to be true. *Killingsworth v. HSBC Bank*, 507 F.3d 614, 618 (7th Cir. 2007).

TB&W argues that Plaintiffs allegations do not contain the requisite particularity to satisfy Rule 9(b) to impose liability upon the company under a theory of agency. (R. 39, TB&W's Mem. at 8.) The requirement of a heightened pleading of agency in fraud cases is dependent on whether the "same circumstances" are used to establish the alleged fraud and the agency relationship. *See Lachumund v. ADM Investor Servs. Inc.*, 191 F.3d 777, 783 (7th Cir. 1999); *Guar. Residential Lending Inc. v. Int'l Mortg. Ctr. Inc*, 305 F. Supp. 2d 846, 854 (N. D. Ill. 2004). If the same circumstances are used to plead both fraud and agency, then the particularized pleading requirements of Rule 9(b) "apply with equal force to the issue of agency and to the underlying fraud claim." *Lachumund*, 191 F.3d at 783. In this case, the Court finds that the agency relationship between Advance Lending and TB&W is not dependent on the allegations of fraud. As previously discussed, Plaintiffs have adequately pleaded a theory of agency for purposes of a motion to dismiss based upon the intricacies of the relationship between Advance Lending and TB&W. This theory of agency is independent of the claims of fraud. Accordingly, a heightened theory of agency is not required for Plaintiffs' allegations of fraud. *Sequel Capital, LLC v. Rothman*, No. 03 C 0678, 2003 U.S. Dist. LEXIS 20967, *40 (N.D. Ill. Nov. 24, 2003) (finding that agency allegation was separate from the circumstances alleging fraud and not subject to the heightened pleading standard of Rule 9(b)). TB&W is therefore an appropriate defendant in Counts I, III, and V and the motion to dismiss on this ground is denied.

**D.    Federal Claims**

**1.    CROA**

Defendants argue that Count I, the CROA claim, should be dismissed. (R. 46, Cardenas & Blue Horizon's Mem. at 3; R. 39, TB&W's Mem. at 10.) The CROA prohibits false statements to

consumer reporting agencies or persons providing credit. *See* 15 U.S.C. § 1679b. Plaintiffs allege

that Defendants violated section 1679b of the CROA "by fraudulently inflating and falsifying"

information on Mrs. Whitley's loan application and "fraudulently overstating the value of the

property." (R. 19, Am. Compl. ¶ 101.)

First, Cardenas and Blue Horizon argue that they cannot be sued under the CROA because

they are not credit repair organizations as defined by the statute. (R. 46, Cardenas & Blue

Horizon's Mem. at 3.) Section 1679b, however, does not limit liability exclusively to credit repair

organizations, and instead provides that "[N]o person may . . . make any statement, or counsel or

advise any consumer to make any statement, which is untrue or misleading . . . with respect to any

consumer's credit worthiness, credit standing, or credit capacity . . . ." 15 U.S.C. § 1679b(a).

"Case law in this district teaches that, even where a plaintiff cannot prove that the defendant is a

credit repair organization within the meaning of section 1679a(3)(A) of the CROA, the plaintiff

potentially can nevertheless state a claim . . . under section 1679b of the CROA." *Costa v. Mauro*

*Chevrolet, Inc.*, 390 F. Supp. 2d 720, 727 (N.D. Ill. 2005).

*Plattner v. Edge Solutions*, Inc., 422 F. Supp. 2d 969 (N.D. Ill. 2006), the case cited by

Cardenas and Blue Horizon in support of their position, is distinguishable from the instant action.

In *Plattner,* plaintiffs pleaded violations of other sections of the CROA, not § 1679b. *Id.* at 973

n.2. *Plattner* did not reject the holding in *Costa* with regard to § 1679b, but held that these other

sections of the CROA expressly limit prohibitions and requirements to credit repair organizations.

*Id.* Accordingly, the Court finds that Plaintiffs need not allege that Cardenas and Blue Horizon

are credit repair organizations, and Cardenas and Blue Horizon's motion to dismiss is denied.

Next, TB&W argues that the CROA claim against it must be dismissed because "it is

inconsistent with a logical reading of the statute" that a person can be guilty of violating the statute for making a false representation to itself. (R. 39, TB&W's Mem. at 10.) In other words, Plaintiffs allege that TB&W violated the CROA because it made untrue or misleading statements in Mrs. Whitley's loan application, and then gave those statements to itself to process the loan. (*See* R. 19, Am. Compl. ¶ 101.) The plain language of the statute prohibits a person from making false representations to another about a consumer's creditworthiness or capacity. *See* 15 U.S.C. § 1679b(a). Plaintiffs have not provided case law to support their position that a person can be liable under the CROA for making a false statement to itself, and this Court is unwilling to establish such a novel precedent.

Furthermore, Plaintiffs argument that TB&W "could be liable for falsely representing to [Plaintiffs] that . . . they could afford to repay the loans," also fails. (*See* R. 71, Pls.' Resp. at 31.) The CROA only prohibits false statements to consumer reporting agencies or persons providing credit. *See* 15 U.S.C. § 1679b. TB&W's alleged false statement to Plaintiffs is not actionable under the CROA because Plaintiffs did not provide credit in this case. Rather, Plaintiffs were the ones who obtained credit. Plaintiffs have not stated an actionable claim against TB&W under the CROA, and therefore TB&W's motion to dismiss Count I is granted.

## 2. RESPA

Defendants next argue that Count II, Plaintiffs' RESPA claim should be dismissed. (R. 36, Logan's Mem. at 4; R. 39, TB&W's Mem. at 11; R. 44, Advance Lending Defs.' Mem. at 10; R. 46, Cardenas & Blue Horizon's Mem. at 10.) RESPA prohibits the payment or receipt of compensation in connection with a federally related mortgage loan merely for the referral of business and also prohibits the splitting of any charges for settlement services other than for

18

services actually performed. 12 U.S.C. § 2607. The RESPA claims alleged by Plaintiffs are subject to a one-year statute of limitations that begins running on the mortgage loan closing date. *See* 12 U.S.C. § 2614; *Thomas v. Ocwen Fed. Bank FSB*, No. 01 C 4249, 2002 U.S. Dist. LEXIS 1231, at *7 (N.D. Ill. Jan. 25, 2002). The mortgage loan in this case closed on or about May 30, 2006. (R. 19, Am. Compl. ¶ 28.) However, Plaintiffs did not file this action until two years later on May 30, 2008. (R. 1, Compl.) Defendants argue that the claim is barred by the statute of limitations.[7] (R. 44, Advance Lending Defs.' Mem. at 10.)

Plaintiffs allege that the statute of limitations should be tolled by Defendants' "fraudulent concealment" of "secret transactions," regarding unearned and illegal fees derived from the loans. (R. 19, Am. Compl. ¶¶ 102-107, 111.) Fraudulent concealment "denotes efforts by the defendant -- above and beyond the wrongdoing upon which the plaintiff's claim is founded -- to prevent the plaintiff from suing in time." *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990); *Greer v. Bank One*, No. 01 C 7352, 2002 U.S. Dist. LEXIS 13715, at *7-8 (N.D. Ill. 2002). A plaintiff must plead with Rule 9(b) particularity the specific conduct of the defendant that entitles the plaintiff to toll the limitations period for fraudulent concealment. *Id.*

In this case, Plaintiffs generally allege that Defendants concealed "secret transactions" and include the conclusory statement that "Defendants took active, affirmative steps to conceal" the payments and fee splits. (R. 19, Am. Compl. ¶ 111-112.) These general allegations referencing Defendants as a single group do not satisfy the particularity required under Rule 9(b). *See In re*

---

[7] In their response, Plaintiffs do not address any of Defendants' arguments to dismiss the RESPA claim and merely reassert that they "have stated claims for violations of RESPA against all defendants . . . under the applicable Sections of RESPA and the case law." (R. 71, Pls.' Resp. at 40.)

*Spiegel, Inc.*, 382 F. Supp. 2d at 101 (attributing allegations to defendants as a single group is generally insufficient to meet the heightened pleading standard of Rule 9(b)); *Uni\*Quality, Inc.*, 974 F.2d at 923 (under Rule 9(b), Plaintiffs must allege the "who, what, where, when and how" of the alleged fraud for each defendant). Moreover, this conclusory allegation of fraudulent concealment does not warrant the Court relaxing the Rule 9(b) requirements. *See Gavin v. AT&T Corp.*, 543 F. Supp. 2d 885 (N.D. Ill. 2008) (refusing to relax Rule 9(b) particularity based on "expansive, undefined fraud claims"). Plaintiffs have failed to allege particular facts which establish that Defendants' fraudulent concealment prevented them from suing in a timely fashion. *See Greer*, 2002 U.S. Dist. LEXIS 13715, at \*7-8 ("The alleged acts of concealment must amount to active steps beyond a mere non-disclosure or failure to disclose the alleged initial fraudulent conduct."). Accordingly, Plaintiffs have not pleaded fraudulent concealment as a basis to toll the statute of limitations. However, the Court will give Plaintiffs the opportunity to replead and cure this defect. Plaintiffs' RESPA claim is therefore dismissed without prejudice.

### 3. Discrimination Claims

In Counts XI - XIII, Plaintiffs allege a Section 1981 Civil Rights Act claim against all Defendants and FHA and ECOA claims against TB&W and Advance Lending. (R. 19, Am. Compl. ¶¶ 184, 188, 204.) The FHA prohibits discrimination in real estate-related transactions and the ECOA prohibits discrimination in credit transactions. *See* 42 U.S.C. § 3605; 15 U.S.C. § 1691. TB&W argues that all three discrimination claims should be dismissed because Plaintiffs' legal conclusion "that she was discriminated against as a minority," is defeated by Plaintiffs' factual assertion "that her loan application identified her as a Caucasian." (R. 39, TB&W's Mem. at 20.) Plaintiffs contend, however, that it is TB&W and Advance Lending's actual knowledge of

20

Plaintiffs' race, not the false information inserted in the loan application, that is the basis for their discrimination claims. (R. 71, Pls.' Resp. at 33.) Plaintiffs allege that the loan terms they received were the result of (1) intentional discrimination (Count XI), and (2) the disparate impact of Defendants' pricing policies for interest rates and closing fees (Counts XII, XIII). (R. 19, Am. Compl. ¶¶ 185-187, 189-192, 205.)

The Court finds that Plaintiffs have adequately stated discrimination claims under the three statutes. In Count XI, Plaintiffs allege that "they were singled out and exploited . . . because of their race." (*Id.* ¶ 187.) Under this theory, racial discrimination served as Defendants' intent or motive, and fraud and misrepresentation were the particular means of the exploitation. Counts XII and XIII focus on TB&W and Advance Lending's practice of paying and accepting higher YSP's in their mortgage loans to minorities. (*Id.* ¶¶ 189-192, 205.) Taking the allegations as true at this time, TB&W and Advance Lending may have fraudulently misrepresented Plaintiffs' income, property value and loan terms, and also imposed higher YSP's because Plaintiffs are African-American. *See Martinez*, 527 F. Supp. 2d 827 (where in addition to fraud claims based on Defendants' fraudulent inflation of Plaintiff's income, the court found that Plaintiffs also stated FHA and ECOA discrimination based on allegations of targeting racial minorities for higher-cost loans). TB&W's motion to dismiss the discrimination claims is therefore denied.

Next, Logan argues that the Section 1981 claim against her should be dismissed because Plaintiffs fail to allege discriminatory intent on her part. (R. 36, Logan's Mem. at 5.) A plaintiff, however, is not required to plead specific facts; the complaint only requires a short and plain statement of the claim showing that the pleader is entitled to relief. *Erickson v. Pardus*, 551 U.S. 89 (2007). In the context of a discrimination claim, a plaintiff is not required to plead facts that

establish all elements of the prima facie case. *Lindsay v. Yates*, 498 F.3d 434, 440 (7th Cir. 2007) ("the prima facie case relates to the employee's burden of presenting evidence") (citation omitted). Here, Plaintiffs allege that Logan filled out Plaintiffs' loan application with false information and was compensated for assigning Plaintiffs, as African-Americans, a interest rate higher then what they qualified for. (R. 19, Am. Compl. ¶¶ 74-78, 194-196.) These allegation are sufficient to apprise Logan of Plaintiffs' claim and the ground upon which it rests. Logan's motion is therefore denied.

Finally, Advance Lending argues that the ECOA claim should be dismissed because the company is not a "creditor" as defined by the statute. (R. 44, Advance Lending Defs.' Mem. at 12.) The statute, however, does not limit liability only to entities with the ability to extend credit. *Treadway v. Gateway Chevrolet Oldsmobile Inc.*, 362 F.3d 971, 976 (7th Cir. 2004). Instead, the ECOA defines a creditor as "any person who regularly extends, renews, or continues credit; any person who regularly arranges for the extension, renewal, or continuation of credit; or any assignee of an original creditor who participates in the decision to extend, renew or continue credit." 15 U.S.C. § 1691a(e). Mortgage brokers like Advance Lending "arrange for the extension of credit" and thus fall under the purview of the statute. *See, e.g., Ware v. Indymac Bank*, 534 F. Supp. 2d 835, 840 (N.D. Ill. 2008); *Martinez*, 527 F. Supp. 2d at 834. Moreover, Advance Lending does not escape liability, as it contends, because it did not make the final credit decision. *See Id.* at n.9 ("mortgage brokers . . . that do not participate in credit decisions are still regarded as "creditors" for the purposes of the [ECOA]'s prohibition against discrimination"). Accordingly, Advance Lending's motion is denied.

## E.    Tort Claims

### 1.    Negligence Claims

The complaint also alleges state law claims of negligent misrepresentation (Count VI), and

negligence (Count VII). (R. 19, Am. Compl. ¶¶ 137-156.) TB&W argues that these negligence

claims are barred by the economic loss doctrine as outlined in *Moorman Mfg. Co. v. National*

*Tank Co.*, 435 N.E.2d 443 (Ill. 1982). (R. 39, TB&W's Mem. at 15.) The economic loss doctrine

bars recovery for purely economic losses. *Id.* There are, however, exceptions to this doctrine.

The Seventh Circuit explained that "a claim for economic loss may be pursued in tort as well as

contract where . . . the claim is founded on a duty of care that the law imposed on the defendant

irrespective of the terms of the contract." *Mut. Serv. Cas. Ins. Co. v. Elizabeth State Bank*, 265

F.3d 601, 617 (7th Cir. 2001); *see also Congregation of the Passion v. Touche Ross & Co.*, 636

N.E.2d 503, 514 (Ill. 1994) ("Where a duty arises outside of the contract, the economic loss

doctrine does not prohibit recovery in tort for the negligent breach of that duty.")

Plaintiffs allege that Defendants had a duty to take "precautions against creating

unreasonable risk of injury from foreseen and foreseeable events" such as Plaintiffs' "eventual

inability to make payments, default on the mortgages, the destruction of plaintiffs' credit, and the

loss of the family's home in foreclosure." (R. 19, Am. Compl. ¶¶ 142, 149.) "Where the law

does not impose a duty, one will not generally be created by a defendant's rules or internal

guidelines. Rather, it is the law which, in the end, must say what is legally required." *Shank v.*

*Fields*, 869 N.E.2d 261, 269 (Ill. App. Ct. 2007). Under Illinois law, a lender "has no duty to

refrain from making a loan if the lender knows or should know that the borrower cannot repay the

loan." *N. Trust Co. v. VIII S. Michigan Ass'n*, 657 N.E.2d 1095, 1102 (Ill. App. Ct. 1995); *see*

23

*also Pommier v. Peoples Bank Marycrest*, 967 F.2d 1115, 1119 (7th Cir. 1992) (lenders do not owe fiduciary duties to borrowers unless the borrower relies on a special relationship of trust and confidence with the lender). In *LaSalle Bank Nat'l Assoc. v. Paramont Props.*, 388 F. Supp. 2d 840 (N.D. Ill. 2008), the court rejected the very argument that Plaintiffs make here. The court found that "Illinois does not, and would not, recognize a general duty of care owed by lenders to borrowers, especially not one that would create tort liability based on internal lending guidelines." *Id.* at 853. Defendants owed no duty of care to Plaintiffs under Illinois law, and therefore Counts VI and VII are dismissed.

### 2. Intentional Infliction of Emotional Distress

In Count VIII, Plaintiffs raise a claim for intentional infliction of emotional distress ("IIED") against Defendants.[8] (R. 19, Am. Compl. ¶¶ 157-163.) Under Illinois law, a plaintiff must allege three elements to bring a claim for IIED: (1) the defendant's conduct was extreme and outrageous; (2) the defendant intended that his conduct inflict severe emotional distress, or knew that there was at least a high probability that his conduct would cause severe emotional distress; and (3) the conduct actually caused severe emotional distress. *Feltmeier v. Feltmeier*, 798, N.E.2d 75, 80 (Ill. 2003). In order to be considered extreme and outrageous, a defendant's conduct must "go beyond all possible bounds of decency" and must be "regarded as intolerable in a civilized community." *Id.* at 80-81.

TB&W argues that this claim should be dismissed because "allegations of fear of financial

---

[8] The complaint also alleges a claim for negligent infliction of emotional distress (Count VIII). (*Id.* ¶¶ 157-163.) Plaintiffs, however, concede that they are unable to allege "a contemporaneous physical harm or impact" as required for this claim. (R. 71, Pls.' Resp. at 49.) Accordingly, Count VIII is dismissed.

security are not sufficient to support a claim for IIED." (R. 39, TB&W's Mem. at 19.) Courts have consistently held that "[a]lthough fright, horror, grief, shame and humiliation, etc. may fall within the ambit of the term 'emotional distress,' these mental conditions alone are not actionable." *Sornberger v. City of Knoxville*, 434 F.3d 1006, 1030 (7th Cir. 2006). Here, the complaint alleges that "Plaintiffs live in fear of losing their home, in fear of financial insecurity in their retirement and in fear of the future." (R. 19, Am. Compl. ¶ 162.) This allegation is insufficient to demonstrate the level of emotional distress necessary to support an IIED claim. *See Johnson v. K Mart Corp.*, 723 N.E.2d 1192, 1198 (Ill. App. Ct. 2000) (feelings of stress and fear insufficient to support IIED claim). Plaintiffs make "no allegations of the type of severe emotional suffering, physical ramifications, medical treatment, or other factors that would point to severe emotional distress." *Redd v. Dougherty*, 578 F. Supp. 2d 1042, 1058 (N.D. Ill. 2008). Plaintiffs' IIED claim therefore fails, and Count VIII is therefore dismissed.

### 3. Inducement of Breach of Fiduciary Duty

In Count X, Plaintiffs allege a claim for inducement of breach of fiduciary duty. (R. 19, Am. Compl. ¶¶ 176-183.) To state a claim for inducement of breach of fiduciary duty under Illinois law, a complaint must allege that a third party: "(1) colluded with the fiduciary in committing a breach of duty; (2) induced or participated in such breach; and (3) obtained the benefits resulting from the breach of duty." *Ottawa Sav. Bank v. JDI Loans, Inc.*, 871 N.E.2d 236, 241-42 (Ill. App. Ct. 2007). TB&W argues that "Plaintiffs have not alleged any facts from which the Court could conclude that a fiduciary duty existed between them and any other Defendant that TB&W could have induced to breach such a fiduciary duty." (R. 39, TB&W's Mem. at 19.)

25

"In Illinois, when one party undertakes to find financing on behalf of another, a principal and agent relationship is created . . . . An agent owes fiduciary duties to his principal as a matter of law." *DeLeon v. Beneficial Constr. Co.*, 55 F. Supp. 2d 819, 827 (N.D. Ill. 1999); *Taylor, Bean & Whitacker Mortgage Co.*, 2004 U.S. Dist. 18803, at *37-38. Plaintiffs allege that they engaged Advanced Lending, Ochoa, Ospina and/or Cardenas for mortgage brokerage services. (Am. Compl. ¶¶ 7, 16, 10, 20, 21.) Taken as true, this allegation creates a fiduciary duty. *See DeLeon*, 55 F. Supp. 2d at 828 ("It is undisputed that plaintiffs engaged the defendants to conduct mortgage services and a fiduciary duty was thereby created.").

Plaintiffs have further alleged that "TB&W induced a breach of Advanced Lending's, Ochoa's, Ospina's and/or Cardenas' fiduciary duty to plaintiffs through its policy of paying YSPs to brokers in exchange for the broker's cooperation in unnecessarily inflating plaintiffs' interest rates." (R. 19, Am. Compl. ¶ 177.) This allegation sufficiently pleads a claim for inducement of breach of fiduciary against TB&W. *See Cunningham v. Equicredit Corp. of Ill.*, 256 F. Supp. 2d 785, 796 (N.D. Ill. 2003) (finding that plaintiffs adequately pleaded that the mortgage company induced a breach of fiduciary duty by alleging that the company provided the broker with referral fees and kickbacks); *Jenkins v. Mercantile Mortg. Co.*, 231 F. Supp. 2d 737, 750 (N.D. Ill. 2002) (finding adequate inducement of breach of fiduciary claim when mortgage brokers received an illegal YSP). Accordingly, TB&W's motion is denied.[9]

---

[9] Finally, Cardenas and Blue Horizon's argument that the tort claims are barred by the statute of limitations fails. (*See* R. 46, Cardenas & Blue Horizon's Mot. to Dismiss at 9-10.) Plaintiffs' complaint was filed on May 30, 2008, the last day before the expiration of any two-year statue of limitations. The additional claims added to the amended complaint relate back to the original complaint and are therefore timely as well. *See Jackson v. Kotter*, 541 F.3d 688, 696 (7th Cir. 2008) (negligence claim added to amended complaint after statute of limitations expired related back to timely filed, original complaint).

## CONCLUSION

For the reasons stated above, the motions to dismiss (R. 35, R. 38, R. 42, R. 46), are GRANTED in part and DENIED in part. The motions to dismiss Counts II, IV, VI, VII, and VIII are GRANTED. Counts IV, VI, VII, and VIII are dismissed with prejudice. Count II is dismissed without prejudice and Plaintiffs are given 21 days to file an amended complaint to replead their RESPA claim. The motion to dismiss Count I is GRANTED as to TB&W but DENIED as to the remaining Defendants. The motion to dismiss are DENIED in all other respects.

The parties are directed to reevaluate their settlement positions in light of this opinion and to fully exhaust all remaining efforts to settle this case. The parties shall appear for a status on May 12, 2009 at 9:45 a.m. to set a litigation schedule for this dispute including a firm trial date.

Date:  April 20, 2009          ENTERED:

**Ruben Castillo**
**United States District Judge**

27